LOUIS H. YARRUT, Judge ad hoc.
This suit seeks recovery of a balance due on an alleged sale of shrimp. Defendants admit the sale and delivery and liability of a certain’ shipment, but deny liability for two other shipments, contending that these two shipments were not sold to them but were delivered for storage for account of plaintiffs.
With respect to the shipments admittedly sold, (totalling $575) defendants paid $200 on account and deposited the balance of $375 in the Registry of the Court.
With respect to the other two shipments valued at $798.39, defendants contend it has no liability therefor because, while in its possession for storage, the shrimp were destroyed by vis major, a hurricane and flood which inundated the entire section and destroyed defendants’ storage plant.
*486 The district judge gave written reasons for judgment. Pie rendered judgment for plaintiffs for the two shipments admittedly sold, but dismissed plaintiffs’ claim for the two shipments on the ground that they were consigned for storage.
There can be no doubt that the defendants would not be liable for the goods of plaintiffs if destroyed by an Act of God while in their possession. There seems to be no dispute that the hurricane and flood actually occurred and that the goods were destroyed. Plaintiffs contend alternatively that defendants did not give them notice in time to salvage the shrimp, if, in fact, the delivery was for storage and not a sale.
The hurricane and flood was a matter of general knowledge, front-page news for many days. Plaintiffs could hardly have .avoided knowledge of it. Defendants’ plant was flooded for some 45 days. There is some dispute as to whether defendants gave actual notice of the flood and damage. At any rate, plaintiffs did not show how they could have salvaged the shrimp.
The two shipments involved were delivered to Buras, a driver of defendants who stated that plaintiffs delivered the merchandise to him for delivery to defendants either to be stored or purchased by defendants at the latter’s option.
Joseph Hingle, one of the partners of plaintiff partnership, admitted that he did not discuss the matter with defendants.
Defendants’ business was to wash, grade, package, freeze and store shrimp from the producers who supplied them with shrimp.
Mr. Hingle admitted that some two or three months before the transactions in question, because the shrimp market was at a low ebb, instead of selling the shrimp they were put in storage with defendants. In support of this statement, Hingle produced an invoice, strangely enough, on the billhead of defendants, dated June 23, 1947, and appearing to be a sale by defendants to plaintiffs. The transaction was not a sale, but the significant part of the invoice is that the defendants charged plaintiffs for processing, glazing and packing of the shrimp, more consistent with a storage relationship than a sale.
Plaintiffs’ counsel make much of the fact that the invoice sets up a unit purchase price for the shrimp. This is not inconsistent with the contention of defendants that the shrimp in question were delivered to them for storage or purchase at the option of defendants. Certainly, if the defendants were to have an option to purchase, there had to be a price fixed in advance at which the shrimp could be purchased.
Plaintiffs contend that the defendants did not have a license to do business as public warehousemen. It is true that LSA-R.S. 54:248 prohibits the operation of a public warehouse or the issuance of negotiable warehouse receipts unless a license is issued by the warehouse commission or the United States Department of Agriculture. The defendants did not pretend to operate as a public warehouse or to issue negotiable warehouse receipts. It appears that defendants operated a cold storage warehouse for their own goods and for those producers who supplied it.
LSA-R.S. 54:1 et seq. regulate ware-housemen, but do not prohibit anyone from acting as private bailee or depositary.
Plaintiffs make much over the fact that defendants could not produce their records and receipts, and much over the fact that after the destruction of the goods by the hurricane and flood, defendants wrote a letter stating that “our records will disclose * * Defendants explained that all records were destroyed in the flood and their entire plant and equipment, valued at $35,000, was a total loss. The use of the wrong tense of this letter by defendants is not material as the evident intent was to show that if the records had not been lost and were available they would show the transaction was one of storage and not one of sale.
Plaintiffs further make much over the fact that defendants admitted they had not billed plaintiffs for storage charges. When it is remembered that the shipments were made on September 9 and 14, 1947, *487 and that the hurricane and flood happened September 19, 1947, it is readily seen that defendants had little time to invoice plaintiffs for the storage charges.
As to whether the transaction was an outright sale or one of storage is a question of fact. The trial judge, after analyzing the facts, gave his conclusion as follows :
“Considering all of the evidence in the case, both from the plaintiffs’ and defendants’ standpoint, the Court has reached the conclusion that the defendants did buy the shrimp which they admit having bought from the plaintiffs; that the other shrimp was taken in and frozen for account of the plaintiffs; that there was a hurricane, which was an act of God, which destroyed defendants’ business, including the shrimp of plaintiffs, as well as other persons who had frozen shrimp in defendants’ plant, for which defendants are not responsible ; that defendants did admit having purchased $575.39 worth of shrimp from the plaintiffs on which there has been paid on account the sum of $200.-00 and the defendants having tendered and deposited in court for account of plaintiffs, with the Clerk of Court, the sum of $375.39, which they admit they owe to the plaintiffs on shrimp which they bought, therefore, for the reasons hereinabove stated, and the law and the evidence being in favor of plaintiffs to the extent that they are entitled to a judgment for the sum of $375.39 and that the defendants having tendered said amount and having admitted that they owe same:”.
Regarding the responsibility of a depositary, bailee or warehouseman, irrespective of what status may be assigned to the transaction involved, LSA-C.C. art. 2937 provides that
“the depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.”
The Revised Statutes regulating warehouse-men, LSA-R.S. 54:21, provides similarly but more explicitly as follows:
“A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary for any loss or injury to the goods which could not have been avoided by the exercise of such care.”
We can see no error of the district court and accordingly the judgment appealed from is affirmed at the cost of appellants. Affirmed.
JANVIER, J., absent, takes no part.